(No. 77-CC-1431—

MARGIE A. SELF, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 5, 1982.*

STEPHEN R. FRANK and JON GRAY NOLL, for Claimant.

WILLIAM J. SCOTT, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

ROE, C.J.

Claimant brought this claim seeking compensation for several items of personal property which were destroyed by Respondent. A hearing on the matter was

held before a commissioner of this Court on May 11, 1979. Following the hearing the commissioner reviewed with counsel the rules for briefing the case, informed them that if they chose to waive briefing he wanted to be notified as soon as possible, and recommended that briefs be filed. Nothing in the record indicates that either party did anything following the conclusion of the hearing. Because the time for filing briefs has long since passed we find that counsel have waived briefing and will proceed with making a determination.

On or about June 22, 1977, the Claimant, Margie A. Self, arrived by taxi at the William G. Stratton Building, a State office building next to the State Capitol. Claimant was employed as a legislative assistant to a State representative and had arrived in Springfield the previous evening to bring office supplies requested by her boss and to generally assist him the following day.

Upon arriving at the Stratton Building she made two trips back and forth from the taxi because she was unable to carry both the boxes of supplies and her suitcase in one trip. Although not exactly clear in the record, she arrived at approximately 1:30 p.m. Upon entering the building she approached the elevators. The elevator was crowded and she was unable to manage both the suitcase and the supplies at the same time. Therefore, not wanting to create confusion and not wanting to leave the suitcase there in the hall without telling anybody, she said she asked a nearby security guard if it would be all right if she left her suitcase there until she returned and told him it would be about 15 or 20 minutes. She testified that he said it was all right. She then boarded the elevator and proceeded to deliver her supplies with the understanding that during the interim the suitcase was in the possession or under the super-

vision or surveillance of a security guard. The security guard was never identified by name nor was he produced as a witness by either side.

During Claimant's absence the receptionist on the first floor noticed the suitcase. Around noon that same day there was a bomb scare on the third floor of the building but the bomb was never located. Mr. Louis McHenry, building manager of the Stratton Building, testified that the receptionist became excited and scared about the possibility that the suitcase contained a bomb and notified him of the presence of the suitcase and that it had been there for about an hour. He called the Secretary of State's security personnel and told them about the suitcase. He was instructed to evacuate people from the area and what evacuation procedures to take. No efforts were taken to ascertain the owner of the suitcase.

Sergeant Clyde L. Parliament, a staff sergeant with the investigation division of the Secretary of State's office responded to the call. He had knowledge of the earlier bomb threat and was also concerned because a certain ethnic group had been demonstrating that day and there had been disturbances in other cities prior to that day by persons of the same ethnicity. Before leaving to go to the Stratton Building he had requested that investigator Paul Finley meet him over there. Both had had special training in the area of hazardous devices including bomb disposal and removal and it was their responsibility to handle bomb situations.

Upon his arrival at the Stratton Building, Sergeant Parliament was met by Mr. McHenry and a couple of uniformed personnel on the first floor. He had them clear the floor and stop people from entering the building. He then approached the suitcase and examined it for

any indication that it might contain a bomb, including looking for wires and listening for ticking. At that point investigator Finley arrived along with Lieutenant Robert J. Howlett and two other security persons. After being advised of the circumstances, investigator Finley also did a closeup investigation of the suitcase. Although neither noticed any indication that the suitcase might contain a bomb, the matter was discussed and it was determined that the suitcase should be removed by remote means.

A system of pulleys and rope was rigged through doors and around trees stretching nearly 100 yards. Upon making sure that the persons on the lower floors of the building were evacuated and the persons on the upper floors were relocated to the far side of the building, the suitcase was pulled on out to a point where it hung suspended from a tree. Lieutenant Howlett, a decorated marksman was then instructed to shoot a twelve gauge slug into the suitcase in an attempt to open it. He donned a safety helmet and from a safe position behind a large pilaster fired the shot. This caused the suitcase to open only partly so Lieutenant Howlett, at Sergeant Parliament's direction, fired a double aught buckshot round into the suitcase. The suitcase dropped completely open and its contents spilled out. Fortunately for all, and especially the Claimant, no explosive device was found.

At no time during the foregoing scenario was there any evidence of attempt to identify ownership of the suitcase, other than testimony that it contained no identification tag. Also, conspicuously absent or silent during this whole time was the security guard who was said to have told Claimant that it was all right to leave the suitcase.

Meanwhile, upon delivering the supplies to the representative's office, Claimant received a message to

go to the capitol building, and went from the office over to the capitol. From the capitol she then headed back to the Stratton Building but was prevented from entering the building. From rumors travelling among the crowd which had since gathered due to the evacuation and excitement she eventually realized that her suitcase might be the cause of all the commotion.

She then went to the far side of the office building where the disarmament was occurring. At approximately the same time she arrived at the scene the shots were fired and the suitcase along with its contents were destroyed. She informed the nearest security officer that she thought it was her suitcase that was just shot. He told her to go over to the police car where by now the suitcase had been placed and if it was her suitcase she was to get in the car and wait.

From Claimant's complaint it appears she seeks recovery under a tort or bailment theory. Facts constituting elements of duty, breach of duty, causation, damages, and freedom from contributory negligence were alleged.

We find that Respondent did have a duty to exercise due care with respect to the property of Mrs. Self. She was an employee of Respondent engaged in activities within the scope of her employment. While on State property and going about her business as a State employee she left her suitcase in the possession of or under the supervision and surveillance of the security guard, another employee of Respondent. Under the circumstances it was not unreasonable for her to do so. The security guard indicated that it was all right for her to do so. We also find that this acquiescence was not outside the scope of his employment as a security guard. Security guards have many responsibilities. It is not relevant that he could have told her not to leave the suitcase behind.

The fact is that he did indicate to her that it was all right and we find that the surrounding circumstances were such as to indicate that he did assume responsibility for it. The only evidence in the record rebutting her version of the essential sequence of events was testimony regarding the color of the uniforms worn by security guards. Respondent did not produce as a witness any security guard on duty at that place and time.

We do not find it necessary to set forth what standard of care the security guard was bound to exercise for we find that the exercise of very minimal care on the part of the security guard would have prevented this unfortunate series of events from taking place. If he was present and properly looking after the suitcase he could have easily allayed the fears of the receptionist or the building manager or the bomb squad, etc. There is nothing to indicate he did anything. Before everybody jumped to conclusions he could have caused some attempt to be made to locate the owner or otherwise prevent the chain of occurrences. We do not think that under the circumstances the suitcase should or would have been opened by "violent eruption", as it was described by the bomb technicians, had they known that the owner was a little late in coming back to claim it and the circumstances surrounding how it got there in the first place. The only evidence as to any attempt made to locate the owner was testimony by Sergeant Parliament that he was told by Mr. McHenry that he attempted to learn to whom the suitcase belonged (tr. 51, 1-2) but Mr. McHenry himself stated earlier in the hearing that he made no attempt to ascertain ownership (tr. 30, 15-17).

We do not find that the security personnel who played a part in the disarmament were negligent. We are satisfied from careful analysis of the record that they

exercised their best judgment and acted properly under the circumstances.

Causation is clear. At no time did any party other than agents of Respondent have control over the suitcase after Claimant boarded the elevator. The acts or omissions of the security guard ultimately resulted in the admitted destruction of the suitcase and it is foreseeable that lack of exercise of due care over a suitcase left in a hallway of a public building would cause it to meet with some peril.

Nor do we think that the actions of Claimant constituted contributory negligence. At all times she was acting pursuant to directions from her boss and within the scope of employment. She did seek and receive permission from the security guard to leave her suitcase behind and it would not be unreasonable for her to assume that it would be safe with him even if she was a little late in returning to pick it up.

That the suitcase and its contents were damaged is beyond dispute. However, the record does not support the value placed on the damaged items by Claimant. The itemized list of damages in the bill of particulars totals $330.00. No receipts or other physical evidence was introduced to corroborate that figure. Based on her testimony on direct and cross- and re-cross-examination we think that damages in the amount of $250.00 were sustained. Claimant also seeks to recover costs of her suit. Absent a statute expressly subjecting the State to costs, recovery of such is improper. No such statute was called to our attention, we could not locate one, and there is no precedent in this Court for awarding costs in an action of this type.

Claimant is hereby awarded the sum of $250.00 (two

hundred fifty dollars and no cents) in full satisfaction of any and all claims arising out of this cause of action.